Filed 6/25/21  Lozada v. WVJP CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CANDY LOZADA,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>WVJP 2017-2, L.P.,<br><br>　　　　Defendant and Appellant. | A162277<br><br>(Sonoma County<br>Super. Ct. No. SCV267396) |

　　　　Candy Lozada sought a preliminary injunction against WVJP 2017-2, L.P. (WVJP) to restrain it from enforcing a levy on two properties after a money judgment had been obtained against Lozada's former husband. Lozada argued that WVJP did not have any interest, right, or title to the properties because she had previously been awarded sole ownership pursuant to the dissolution judgment from her divorce.  She acknowledged, however, that her former husband's name had never been removed on the title to the properties.  The trial court issued a preliminary injunction.  On appeal, WVJP contends that the trial court abused its discretion because Lozada failed to satisfy her burden of establishing a sufficient likelihood of prevailing on the merits of her claims.  We agree and reverse.

1

# BACKGROUND

Lozada was married to her husband Salvador prior to 2008. They owned one property in Santa Rosa as community property, and another property in Windsor as joint tenants. Lozada subsequently petitioned for dissolution of the marriage. Lozada was self-represented and her husband did not participate in the divorce proceedings. In 2008, the judgment of dissolution awarded both properties to Lozada as her sole separate property. It further ordered that Lozada's husband "shall cooperate in signing any and all documents necessary to confirm the real property stated above to Wife as her sole and separate property, including any quitclaim deeds or other documentation." Importantly, no such documentation was executed or recorded following the dissolution judgment.

In 2013, a money judgment was obtained by Excel Realty Partners, L.P. against Lozada's former husband in the amount of $223,553.62. In 2014, an abstract of the money judgment was recorded in the Sonoma County Recorder's Office. In June 2020, the money judgment was assigned to WVJP. In October 2020, a writ of execution was issued for the money judgment and accrued interest. In December 2020, a notice of levy was recorded for each property.

In November 2020, Lozada sued Excel Realty Partners, L.P. and amended the complaint shortly thereafter to name WVJP as a defendant. The complaint asserts four causes of action: (1) injunctive relief for temporary restraining order, preliminary injunction, and permanent injunction; (2) declaratory relief; (3) quiet title; and (4) intentional infliction of emotional distress. Each cause of action is premised on the allegation that Lozada obtained sole ownership of the properties pursuant to the dissolution

2

judgment, and thus the defendants have no interest, right, or title to the properties.

Lozada then sought a preliminary injunction to enjoin WVJP from enforcing the levy. She argued that she was entitled to the relief demanded in the complaint because she had obtained sole ownership of the properties, and that enforcement of the levy would cause irreparable harm because she and her children live on the Windsor property and she uses the Santa Rosa property for rental income. She also stated that her husband's name was never removed from the title because she had represented herself in the divorce that was uncontested by her husband, had no knowledge of the requirement to remove his name, and was unaware that she could proceed with such removal by quitclaim deed. She had been informed of the money judgment in 2013, but was unaware of any personal responsibility for payment. When she received documents regarding the levy in 2020, she informed counsel for WVJP of the dissolution judgment. Counsel responded that the failure to sign and record a quitclaim deed evidenced a continued ownership interest in the properties held by her former husband.

In December 2020, an interspousal transfer deed for both of the properties was recorded in the Sonoma County Recorder's Office. Each stated: "This Grant Deed establishes sole and separate property of a spouse pursuant to a divorce."

In January 2021, the trial court granted the preliminary injunction. It concluded that the scales tipped in Lozada's favor based on the "extreme and irreparable harm she will incur if the injunction is denied yet she ultimately prevails on the merits of this action, including the forced sale of her properties and the potential eviction of her and her children from their family home." Based on this showing of harm, the trial court found that Lozada

3

"has shown a sufficient likelihood of prevailing on the merits to warrant the preliminary injunction." It reasoned that, while WVJP was "correct that Judgment of Dissolution is not self-executing and requires further action," the court "retains jurisdiction to make further orders to effectuate the judgment and confirm the separate property awards."

## DISCUSSION

In deciding whether to issue a preliminary injunction, the trial court weighs two interrelated factors: (1) the likelihood that the party seeking relief will prevail on the merits; and (2) the relative interim harm to the parties if the preliminary injunction is granted or denied. (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.) This determination "reflects nothing more than the superior court's evaluation of the controversy on the record before it *at the time* of its ruling; it is not an adjudication of the ultimate merits of the dispute." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1109.)

The potential-merit and interim-harm factors are viewed on a sliding scale: the greater the plaintiff's showing on one factor, the less must be shown on the other. (*Butt v. State of California* (1992) 4 Cal.4th 668, 678.) A trial court, however, "may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Ibid.*) Plaintiff bears the burden to establish that these factors have been met. (*Winter v. Natural Resources Defense Council, Inc.* (2008) 555 U.S. 7, 20.)

"The appellate standard for reviewing preliminary injunctions is well established." (*Hunt v. Superior Court, supra*, 21 Cal.4th 984 at p. 999.) In general, the decision to issue a preliminary injunction rests in the sound discretion of the trial court and is not disturbed absent an abuse of discretion. (*Ibid.*) We do not reweigh conflicting evidence, but instead defer to the trial

4

court's factual findings if they are supported by substantial evidence. (*City of Corona v. AMG Outdoor Advertising, Inc.* (2016) 244 Cal.App.4th 291, 298–299.) "To the extent the plaintiff's likelihood of prevailing on the merits turns on legal rather than factual questions, however, our review is de novo." (*Ibid.*)

Here, WVJP does not challenge the trial court's determination on the interim-harm factor. Instead, it argues that the trial court abused its discretion because Lozada failed to meet her burden on the potential-merits factor. Lozada's claims for injunctive and declaratory relief, quiet title, and intentional infliction of emotional distress are all premised on the allegation that she obtained sole ownership of the properties pursuant to the dissolution judgment entered in 2008. WVJP contends that this allegation is fatally flawed because entry of the dissolution judgment did not, on its own, convey title to her and extinguish her former husband's ownership or interest in the properties.

We agree. As the trial court acknowledged, the dissolution judgment was not "self-executing" and required further action to remove her husband's name from the title. (See *Buic v. Buic* (1992) 5 Cal.App.4th 1600, 1604 [explaining that after a dissolution judgment was entered awarding real property to the husband as his separate property, record title remained in the wife's name and allowed her to convey the property, or at least her interest in the property].) A dissolution judgment that awards real property as sole and separate property to one spouse may be effectuated by deed, or by recordation of the dissolution judgment itself. "When the judgment awards real property by legal description, a certified copy can be recorded in the county where the property is located; *such recordation operates to convey title* when the judgment becomes final." (Hogoboom & King, Cal. Practice Guide: Family

5

Law (The Rutter Group 2021) ¶ 15:266, italics added.)  While recordation of a dissolution judgment awarding real property by legal description "dispenses with the need for a grant deed and can be useful where the obligor party is not cooperative, counsel should insist upon execution of the necessary documents of title, and the judgment should contain a provision ordering same." (*Ibid.*)  Here, the unrecorded dissolution judgment provided that Lozada's husband "shall cooperate in signing any and all documents necessary to confirm the real property stated above to Wife as her sole and separate property, including any quitclaim deeds or other documentation." Despite this provision, no such documentation was executed or recorded until 2020—12 years after the entry of the dissolution judgment and, more importantly, six years after the judgment liens were created by recording an abstract of the money judgment.  Lozada does not argue that these recent interspousal transfer deeds somehow defeat the preexisting judgment liens. We thus conclude that Lozada failed to meet her burden to establish some possibility that she will prevail on the merits based on the unrecorded dissolution judgment.  (*Butt v. State of California*, *supra*, 4 Cal.4th at p. 678.)

We similarly conclude that Lozada has not satisfied her burden by reference to the trial court's retention of jurisdiction after the dissolution judgment.  "To the extent that a judgment of dissolution is not self-executing in respect of any division of property therein ordered, the court retains jurisdiction to make such further orders as are appropriate to compel obedience to its judgment." (*Bonner v. Superior Court* (1976) 63 Cal.App.3d 156, 165.)  In *Bonner*, an interlocutory judgment of dissolution was rendered that awarded real property to the wife and ordered her to pay $5,000 to her husband for his interest in that property.  (*Id.* at p. 159.)  *Bonner* concluded that the trial court retained the power to order a sale of the property when

6

the wife refused to pay the $5,000 awarded to the husband, in order to carry out its equal division of the community property. (*Id.* at p. 167.) Here, there is no need for the trial court to "compel obedience" from either Lozada or her former husband because the interspousal transfer deeds have been recorded. (*Id.* at p. 165.) Moreover, Lozada does not present any argument or authority for the proposition that a trial court could issue some further order (for example, making the interspousal transfer deeds retroactive or modifying their effective date) that would defeat the judgment liens or otherwise divest WVJP of any rights or interest in the properties.

Lozada offers no other challenges to the validity of the liens. "Under California's judgment lien law, a judgment creditor's recordation of an abstract of judgment creates a judgment lien that attaches to all real property situated in the county in which the judgment is recorded and that otherwise is subject to enforcement of the money judgment against the debtor." (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 64–65, citing Code Civ. Proc., §§ 697.310, 697.340.) Lozada does not dispute that an abstract of the money judgment was recorded in the Sonoma County Recorder's Office in 2014. Nor does she raise any challenge to the validity of the money judgment, the assignment of the money judgment to WVJP, the writ of execution, or the notices of levy.

In sum, Lozada failed to satisfy her burden of establishing some possibility that she will ultimately succeed on the merits of her claims and accordingly, the trial court could not grant the preliminary injunction regardless of its determination on the balance of interim harm. (*Butt v. State*

*of California*, *supra*, 4 Cal.4th at p. 678.) We thus conclude that the trial court abused its discretion in issuing the preliminary injunction.[1]

## DISPOSITION

The order granting Lozada's preliminary injunction is reversed. The parties shall each bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).

---

[1] In reaching this conclusion, we do not adopt WVJP's argument that Lozada fails to meet her burden on the potential-merits factor because there was no transmutation of the properties pursuant to Family Code section 852, subdivision (a). Family Code section 850 provides that "married persons" may agree to transmute their community or separate property. Family Code section 852, subdivision (a) provides that transmutation is only valid if certain requirements are met, including that the adversely affected "spouse" make, join in, or consent to transmutation in writing. WVJP offers no authority for the application of these statutes to the Lozadas, whose marriage had already been dissolved.

_____

Rodriguez, J.[*]

WE CONCUR:


_____

Simons, Acting P. J.


_____

Burns, J.


A162277


_____

[*] Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9